Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| WINDMAR P.V. ENERGY, INC., H/N/C WINDMAR HOME<br><br>APELADOS<br><br>V.<br><br>ULISES VELASCO PACHECO, YADIELIZ RIVERA MARCANO<br><br>APELANTES | TA2026AP00218 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2024CV04705<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente.

# SENTENCIA

En San Juan, Puerto Rico, a 12 de mayo de 2026.

## I.

El 28 de febrero de 2026, el señor Ulises Velasco Pacheco y la señora Yadieliz Rivera Marcano (señor Velasco y señora Rivera o parte apelante) presentaron el recurso de *Apelación* en el que solicitaron que revoquemos la *Sentencia Final* emitida el 26 de enero de 2026, notificada y archivada digitalmente el 27 de enero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Bayamón.[1] En el referido dictamen, el TPI declaró Ha Lugar una solicitud de sentencia sumaria presentada por Windmar P.V. Energy, Inc. (Windmar o parte apelada).

---

[1] Véase entrada núm. 39 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

El 3 de marzo de 2026, emitimos una Resolución a través de la cual concedimos a Windmar hasta el 30 de marzo de 2026, para presentar su alegato en oposición.[2]

El 26 de marzo de 2026, la parte apelada presentó su *Oposición a Recurso de Apelación*, en el que solicitó que se confirme la *Sentencia Final*.[3]

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y procederemos a discutir los hechos pertinentes a la controversia ante nuestra consideración.

## II.

El caso de marras tiene su génesis el 12 de agosto de 2024, cuando Windmar presentó una *Demanda* contra el señor Velasco y la señora Rivera por cobro de dinero.[4] En la misma, alegó ser una compañía dedicada a la venta e instalación de sistemas de energía renovable, en específico sistemas de placas fotovoltaicas. En ese contexto, sostuvo que para el 30 de marzo de 2023, suscribió un *Acuerdo de Arrendamiento y Sistema de Almacenamiento de Energía* con el señor Velasco y la señora Rivera, por medio del cual Windmar se comprometió a instalar en las dependencias de la parte apelante un Sistema de Energía Solar de 10.400 kW y un sistema de almacenamiento de energía solar (batería) de 27.00 kWh. Adujo que como parte de los anejos del Acuerdo de Arrendamiento y Sistema de Almacenamiento de Energía, se incluyó un *Aviso de Cancelación*, el cual detallaba que la parte apelante tenía un término de siete (7) días para cancelar la transacción sin penalidad alguna.

Añadió que, la parte apelante tenía hasta el 6 de abril de 2023 para notificar su intención de cancelar el Acuerdo sin penalidad alguna. Además, como parte del *Certificado de Orientación y*

---

[2] Véase entrada Núm. 2 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[3] Íd., entrada núm. 3 del expediente digital del caso en el SUMAC-TA.
[4] Véase entrada núm. 1 del expediente digital del caso en el SUMAC-TPI.

*Compromiso*, firmado por el señor Velasco el 28 de marzo de 2023, este acordó y certificó haber leído los términos y condiciones del negocio. La parte apelada, adujo que dichos términos y condiciones detallaban que, vencido el periodo de siete (7) días, el cliente sería responsable de pagar un cargo por cancelación si cancelaba o posponía la instalación por más de treinta (30) días desde que se le informaba que el equipo estaba listo para instalar, la cual sería de $1,995.00 previo a recibir el plano, de $5,995.00 luego de recibido el plano y previo a la instalación, o el valor total del Equipo Fotovoltaico, el cual es de $56,560.00, una vez hubiese comenzado el proceso de instalación.

Así las cosas, Windmar alegó que coordinó con la parte apelante comenzar el proceso de instalación para el 21 de junio de 2023. En dicha fecha, el personal de Windmar se personó a la residencia de los apelantes para comenzar la instalación, pero, debido a que un equipo de aire acondicionado no había sido removido, no se pudo completar. Posteriormente, Windmar alegó que se vio en la necesidad de cancelar y/o recalendarizar la visita de instalación en más de diez (10) ocasiones a causa de la parte apelante y, que no fue hasta un año después, que las partes lograron calendarizar una visita. Dicha visita fue pautada para el 16 de julio de 2024, sin embargo, no se pudo llevar a cabo debido a que la parte apelante solicitó la cancelación del contrato y la remoción del sistema que ya había sido instalado. Por tanto, arguyó la parte apelada que, los apelantes son responsables por el valor total del sistema solar, en tanto una vez comenzado el proceso de instalación, el acuerdo no se podía cancelar.

El 10 de febrero de 2025, luego de haber transcurrido una prórroga solicitada por la parte apelante, y el tribunal de instancia haber ordenado presentar contestación a la demanda so pena de anotar la Rebeldía y dictar sentencia conforme a las alegaciones,

esta presentó su *Contestación a Demanda.*[5] En dicho escrito, la parte apelante negó la mayoría de las alegaciones de la demanda. Por su parte, arguyó que la fecha correcta del Acuerdo de Arrendamiento y Sistema de Almacenamiento de Energía fue el 30 de marzo de 2023. Además, alegó no haber firmado, o no recuerda haber firmado, el Certificado de Orientación y Compromiso con fecha del 20 de marzo de 2023, así como la Hoja de Pre-Calificación de Placas y Crédito y el Aviso de Cancelación.

Por otra parte, alegó que desconocía el término para cancelar el acuerdo sin penalidad, y aunque no existía la intención de cancelar en un inicio, posteriormente solicitó en reiteradas ocasiones la cancelación del acuerdo por incumplimiento de la parte apelada. Asimismo, negó que la instalación no se hubiese podido finalizar, dado que no había algo que impidiera que se llevara a cabo, y la cual fue completada en su totalidad posteriormente.

El 14 de marzo de 2025, Windmar cursó a la parte apelante un Interrogatorio y Producción de Documentos y un Requerimiento de Admisiones, por conducto de su representación legal. Luego de varios trámites procesales, el 27 de junio de 2025 Windmar le remitió un correo electrónico a la parte apelante, en el que daba seguimiento al descubrimiento de prueba previamente cursado y no respondido, además, acompañó un Segundo Requerimiento de Admisiones. El referido Segundo Requerimiento de Admisiones no fue contestado en el término de veinte (20) días que establecen las Reglas de Procedimiento Civil, por lo que transcurrido más de ochenta (80) días sin que la parte apelante presentara una contestación, y sin haber solicitado una prórroga, se solicitó que se dieran por admitidos. A tales fines, el 7 de octubre de 2025, Windmar presentó *Moción de Sentencia Sumaria.*[6]

---

[5] Íd., entrada núm. 10 del expediente digital del caso en el SUMAC-TPI.
[6] Íd., entrada núm. 30 del expediente digital del caso en el SUMAC-TPI.

En síntesis, la parte apelada solicitó por medio de la Moción de Sentencia Sumaria, que conforme a los hechos no controvertidos de que Windmar instaló parcialmente un sistema fotovoltaico a la parte apelante, quien incumplió con el Acuerdo,  procedió a cancelar el mismo, y prohibió continuar con la instalación, el tribunal declarase Ha Lugar la solicitud de sentencia sumaria. Asimismo, que ordenara a la parte apelante pagar la cantidad de $56,560.00 de manera conjunta y solidaria, más los intereses acumulados.

Así las cosas, el 8 de octubre de 2025, el TPI ordenó a la parte apelante a exponer su posición sobre la Moción de Sentencia Sumaria en un término de veinte (20) días.[7] En vista del incumplimiento de la apelante con lo ordenado, el 31 de octubre de 2025, Windmar presentó una *Solicitud Para Que Se De Por Sometida La Moción de Sentencia Sumaria,*[8] tras haber transcurrido el término concedido por el Tribunal sin la parte apelante haber expuesto su posición. Posteriormente, el 9 de diciembre de 2025, el TPI emitió orden donde dio por sometida la Moción de Sentencia Sumaria.[9]

El 24 de diciembre de 2025, la parte apelante presentó *Moción de Reconsideración,*[10] en la cual alegó que su representante legal había sido sometida a un procedimiento médico invasivo el 15 de septiembre de 2025 y a una intervención cardiaca el 30 de octubre de 2025, por lo que se limitó sustancialmente su capacidad de atender oportunamente los asuntos procesales del caso. No obstante, arguyó que previo a la presentación de la Moción de Sentencia Sumaria por la parte apelada, el TPI celebró la Conferencia de Manejo de Caso, donde autorizó el descubrimiento de prueba y señaló una Conferencia con Antelación a Juicio y Vista Transaccional para el 28 de enero de 2026, considerando la

---

[7] Íd.,  entrada núm. 31 del expediente digital del caso en el SUMAC-TPI.
[8] Íd., entrada núm. 32 del expediente digital del caso en el SUMAC-TPI.
[9] Íd., entrada núm. 33 del expediente digital del caso en el SUMAC-TPI.
[10] Íd., entrada núm. 34 del expediente digital del caso en el SUMAC-TPI.

condición de salud de la representante legal de la parte apelante. Por lo que consideraba que, la determinación de dar por sometida la Moción de Sentencia Sumaria afectaba el debido proceso de ley de la parte apelante y resultaba un mecanismo punitivo al persistir controversias sustanciales, entre ellas, la legitimación activa de la parte apelada, la naturaleza contractual de los documentos suscritos, la posible inexistencia de solidaridad contractual y el alcance jurídico de los requerimientos de admisiones no contestados. Por tanto, solicitó al TPI que reconsiderara y dejara sin efecto la determinación de dar por sometida la Moción de Sentencia Sumaria, y que concediera a la parte apelante un término adicional razonable para presentar su oposición.

Posteriormente, Windmar presentó su *Oposición a Moción de Reconsideración*,[11] en donde manifestó que la génesis de esta controversia se retrotrae al 27 de junio de 2025, cuando la parte apelada cursó un Requerimiento de Admisiones a la parte apelante para ser contestado conforme a las Reglas de Procedimiento Civil en un término de veinte (20) días. Señaló que, dicho plazo venció el 17 de julio de 2025, y transcurrido un plazo de ochenta (80) días desde el vencimiento, Windmar presentó la Moción de Sentencia Sumaria. Así las cosas, alegó que, no fue hasta el 24 de diciembre de 2025 que la parte apelante compareció para expresarse oportunamente. Por tanto, solicitó que el TPI declarase sin lugar la solicitud de reconsideración de la parte apelante y diera por sometida la Moción de Sentencia Sumaria. El 26 de enero de 2026, el TPI emitió orden donde aceptó la reconsideración y permitió la posición de la parte apelante.[12]

---

[11] Íd., entrada núm. 35 del expediente digital del caso en el SUMAC-TPI.
[12] Íd., entrada núm. 37 del expediente digital del caso en el SUMAC-TPI.

El 26 de enero de 2026, notificada el 27 de enero de 2026, el TPI emitió la *Sentencia Final* apelada.[13] En virtud de esta, dio por admitidos los hechos incontrovertidos propuestos por Windmar y dispuso que no existían controversias sobre los siguientes hechos materiales:

1. Velasco firmó el Certificado de Orientación el 28 de marzo de 2023.

2. Velasco fue la única persona que firmó el Certificado de Orientación.

3. Para el 28 de marzo de 2023, Velasco era el propietario de la casa cuya dirección física es: Urb. Ciudad Jardín II, Calle Sauce, P.R.

4. Para el 28 de marzo de 2023, la propiedad constaba inscrita en el Registro de la Propiedad.

5. Para el 28 de marzo de 2023, la descripción de la propiedad de Velasco, según detalla el Catastro Digital es: Parcela 112-039-34808; procedencia 112-039-348-08: Dueño – Velasco Pacheco Ulises Omar; Dirección física– Urb. Ciudad Jardín II 53, Calle Sauce PR, Puerto Rico, 00000, Toa Alta.

6. Velasco proveyó a Windmar copia de su licencia de conducir como parte de la información provista.

7. Velasco llenó un Certificado de Instala y Gana con Windmar.

8. Velasco completó y firmó la Hoja de Pre Calificación de Placas y Crédito.

9. El 30 de marzo de 2023, Velasco firmó un Acuerdo de Arrendamiento y Sistema de Almacenamiento de Energía.

10. Velasco firmó el Acuerdo de Arrendamiento y Sistema de Almacenamiento como coarrendatario.

11. Rivera aparece como arrendataria en el Acuerdo de Arrendamiento y Sistema de Almacenamiento.

12. Velasco fue orientado por un vendedor de Windmar.

13. Velasco no se opuso a firmar el Certificado de Orientación.

14. El Certificado de Orientación firmado por Velasco incluye una cláusula que establece "... tendré un periodo de siete (7) días para cancelar dicho acuerdo libre de costo".

---

[13] Íd., entrada núm 39 del expediente digital del caso en el SUMAC-TPI.

15. El Certificado de Orientación firmado por Velasco incluye una cláusula que establece "He sido orientado que existe un periodo de siete (7) días no prorrogable desde que se firma el acuerdo, para cancelar el acuerdo libre de costo. Vencido el periodo de siete (7) días, seré responsable de pagar un cargo por cancelación si cancelo o pospongo la instalación por más de treinta (30) días desde que se me informa que está listo para instalación. La penalidad por pagar será: (1) $1,995.00 si cancelo luego del periodo inicial de 7 días y previo a recibir el plano; (2) $5,995.00 si cancelo una vez recibido el plano y previo a la instalación; (3) una vez comience el proceso de instalación seré responsable por el valor total del Equipo Fotovoltaico".

16. El Certificado de Orientación detalla que "El Certificado de Orientación es el equivalente a un acuerdo con WH. Una vez firmado, WH procederá a diseñar el equipo fotovoltaico para mi dependencia y coordinar todo lo necesario para instalación eventual de la misma. Po su parte, como Comprador, soy responsable por el pago del Equipo y/o su financiamiento o la penalidad por cancelación dependiendo de la etapa en que se encuentre el proyecto".

17. Velasco firmó el Certificado de Orientación libremente.

18. Velasco, de manera libremente, se hizo responsable por el pago del Equipo y/o su financiamiento o la penalidad por cancelación dependiendo la etapa en que se encuentre el proyecto".

19. El vendedor de Windmar no obligó a Velasco a firmar el Certificado de Orientación.

20. Velasco indicó haber leído los términos y condiciones del Certificado de Orientación y aceptó de manera libre y voluntariamente cumplir con el Acuerdo.

21. Velasco escribió su nombre completo e indicó haber leído los términos y condiciones del Certificado de Orientación y aceptó de manera libre y voluntariamente cumplir con el acuerdo.

22. Velasco no hizo esfuerzos para cancelar el acuerdo durante los siete (7) días provisto por Windmar para cancelar libre de costo.

23. Velasco no se comunicó con Windmar durante los siete (7) días provisto por Windmar para cancelar libre de costo.

24. El Certificado de Orientación firmado por Velasco incluye una cláusula que establece que "una vez comience el proceso de instalación, seré

responsable por el valor total del Equipo Fotovoltaico".

25. El valor total del Equipo Fotovoltaico es $56,560.00.

26. Velasco no removió la cisterna, antenas y aires acondicionados ubicados en el techo de su propiedad.

27. Windmar comenzó el proceso de instalación el 21 de junio de 2023.

28. Velasco y Windmar estuvieron en comunicación para coordinar completar la instalación previo a que Velasco hiciera su solicitud de cancelación.

29. Velasco le solicitó a Windmar que removieran las placas para instalarlas en otra propiedad ubicada en el Barrio Lomas en el Sector Quiles de Naranjito.

30. Velasco se comunicó con Windamr[sic] para cancelar el Acuerdo el 16 de julio de 2024.

31. Al día de hoy, Velasco no le ha pagado a Windmar los $56,560.00.

32. Al día de hoy, Velasco le debe a Windmar $56,560.00 por no haberse completado la instalación del sistema y no permitir que se complete la instalación.

Cónsono con estas determinaciones, y a la luz del derecho aplicable, el TPI concluyó que resultaba procedente la solicitud de sentencia sumaria presentada por Windmar, dado a la inexistencia de hechos en controversia que surgen del *Requerimiento de Admisiones* admitido por el TPI. Resolvió que de los hechos incontrovertidos del caso se desprende que la parte apelante firmó el Acuerdo con Windmar el día 30 de marzo de 2023, para la compra e instalación del Equipo Fotovoltaico valorado en $56,560.00. Concluyó, además, que el señor Velasco firmó el Certificado de Orientación, el cual equivale un contrato entre las partes, el 28 de marzo de 2023. Precisó que, el Certificado de Orientación establecía que la parte apelante tenía un término de siete (7) días para cancelar el Acuerdo libre de costo, pero que el señor Velasco y la señora Rivera nunca solicitaron la cancelación del Acuerdo dentro del

término provisto. A su vez, el Certificado de Orientación incluía una cláusula que establecía que una vez Windmar comenzara el proceso de instalación, la parte demandada era responsable por el valor total del equipo fotovoltaico. Por otra parte, concluyó que de los hechos incontrovertidos y admitidos por la parte apelante se desprende que subsiguiente a la instalación parcial, Windmar hizo múltiples esfuerzos para completar la instalación, sin embargo, no fue hasta luego de más de un (1) año que la parte apelante le proveyó una fecha para completar la instalación, la cual no se pudo concretar en tanto y en cuanto el señor Velasco solicitó la cancelación del Acuerdo y ordenó que se removiera el equipo que había sido instalado en la propiedad.

De conformidad a lo anterior, el TPI concluyó que la parte apelante le adeuda a Windmar la cantidad de $56,560.00 reclamados en la demanda del caso que nos ocupa. Consecuentemente, condenó solidariamente al señor Velasco y la señora Rivera al pago de $56,560.00 y la suma de $3,000.00 por concepto de honorarios de abogados.

En desacuerdo, el 28 de febrero de 2026, el señor Velasco y la señora Rivera presentaron el recurso de *Apelación* de epígrafe y le imputaron al TPI la comisión de los siguientes errores:

> Erró el Tribunal de Primera Instancia al dictar sentencia sumaria en circunstancias que, en su efecto práctico, privaron a la parte demandada de una oportunidad real y efectiva de ser oída, en violación al debido proceso de ley.

> Erró el Tribunal de Primera Instancia al no conceder un término razonable adicional (o al no considerar excusa justificada) para que la parte demandada presentara su oposición a la moción de sentencia sumaria, a pesar de constar en el trámite judicial circunstancias médicas extraordinarias que afectaban a la representación legal.

> Erró el Tribunal de Primera Instancia al adjudicar sumariamente sin considerar, a la luz de la política pública que favorece la adjudicación en los méritos, alternativas procesales menos drásticas y disponibles

para atender el trámite sin privar a la parte de su día en corte.

Erró el Tribunal de Primera Instancia al concluir que no existían controversias genuinas de hechos materiales que impidieran la adjudicación sumaria, cuando del alegato y de la Contestación a la Demanda surgían disputas sustanciales sobre hechos pertinentes y determinantes.

Argumentó que, en el caso de marras, la adjudicación sumaria se produjo en un contexto en el que el pleito se estaba tramitando activamente y constaba en autos las circunstancias extraordinarias de salud de la representación legal que incidieron en el cumplimiento del término para oponerse, por tanto, dictar sentencia final sin brindarle a la parte apelante la oportunidad de argumentar sobre el mecanismo sumario tuvo el efecto práctico de privarle del debido proceso de ley. Por otra parte, expuso que el incumplimiento no se debió a una simple falta de diligencia, sino que ante el cuadro extraordinario informado al tribunal, combinado con la decisión de dar por sometida la moción sumaria y luego dictar sentencia final, sin ponderación adecuada de una oportunidad a la parte apelante para oponerse, resultó en una adjudicación equivalente a una sanción procesal severa.

De la misma forma, argumentó que resultaba razonable considerar alternativas menos drásticas antes de disponer del caso sumariamente, toda vez que, el efecto práctico fue equivalente a una desestimación formal. Por último, alega que existían controversias de hechos materiales, cuando del alegato y de la Contestación a la Demanda surgen disputas relacionadas con el cumplimiento contractual y el alcance de las obligaciones entre las partes que impedían la adjudicación sumaria. Entre ellas, que la parte apelada incumplió sus obligaciones contractuales, que el sistema fotovoltaico nunca funcionó adecuadamente, y que continuó la

facturación de energía eléctrica por parte de LUMA sin beneficio del sistema.

Por su parte, el 26 de marzo de 2026, la parte apelada presentó su Oposición a Recurso de Apelación. Arguyó que, surge de manera clara del expediente del caso que, la parte apelante no solo incumplió con el término de (20) días para contestar el requerimiento de admisión, sino que transcurrieron sobre ochenta (80) días sin que los apelantes atendieran los requerimientos de admisiones, incluso, tampoco lo hizo previo a que el TPI emitiera Sentencia. Por tanto, alega que la omisión, la cual incluyen pero no se limitan, a contestar los requerimientos de admisiones, que consencuentemente se dieron por admitidos, son únicamente atribuibles al proceder de la parte apelante, así como su efecto procesal.

En adelante, evaluaremos las normas jurídicas atenientes a los errores planteados por la parte apelante.

**III.**

**A.**

En el mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap.V., R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria sobre la totalidad de la reclamación o parte de esta. De esta forma, se promueve la descongestión de calendarios, así como la pronta adjudicación de controversias

cuando una audiencia formal resulta en una dilación innecesaria. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

Ahora bien, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demana; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). Asimismo, al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 138 (2015); *Ramos Pérez v. Univisión*, 178 DPR 200, 216-217 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. *Ramos Pérez v. Univisión*, *supra*, pág. 213. La controversia sobre el hecho material debe ser real. Íd. A saber:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada

sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. Íd., págs. 213-214, *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. ***Meléndez González et al. v. M. Cuebas***, *supra.* En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. Íd., citando a ***Ramos Pérez v. Univisión***, *supra,* pág. 214. De esta manera, entre las responsabilidades de la parte promovida se encuentra el puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. ***León Torres v. Rivera Lebrón,*** *supra.* Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". Íd. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. ***SLG Zapata-Rivera v. JF Montalvo***, *supra*; ***Ramos Pérez v. Univisión***, *supra,* pág. 215; ***Cruz Marcano v. Sánchez Tarazona***, 172 DPR 526, 550 (2007). Lo anterior, además, es cónsono con los requerimientos establecidos por las Reglas de Procedimiento Civil, *supra,* en lo

pertinente a este mecanismo procesal. Entre estos, la Regla 36.3(b) de Procedimiento Civil, *supra,* R. 36.3(b) dispone:

> (b) La contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente:
>
>> (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior;
>>
>> (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
>>
>> (3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
>>
>> (4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.

Si la parte promovida no cumple con los requisitos impuestos por la mencionada regla, el tribunal podría resolver en su contra de entenderlo procedente. Regla 36.3 (c) de Procedimiento Civil, *supra,* R. 36.3 (c). Véase, además, ***Cruz Marcano v. Sánchez Tarazona,*** *supra*; ***SLG Zapata Berríos v. JF Montalvo,*** supra, y ***Ramos Pérez v. Univisión Puerto Rico,*** *supra.*

Cabe señalar que la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición defensas o reclamaciones nuevas, ajenas a hechos consignados previamente, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva. ***León Torres v. Rivera Lebrón***, *supra,* pág. 54. Así, se salvaguarda el debido proceso de ley de las partes, especialmente el principio de notificación adecuada y el derecho que tiene un demandado de conocer las alegaciones en su

contra; de forma que este pueda prepararse para el proceso judicial en su contra. Íd., pág. 31.

En síntesis, ha quedado establecido que los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existan alegaciones afirmativas en la demanda sin refutar; (3) cuando surja de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no proceda como cuestión de derecho. *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

Entretanto, desde el punto de vista procesal, la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, impone que, si en virtud de una moción de sentencia sumaria no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y resulta necesario celebrar un juicio, entonces es obligatorio que el tribunal resuelva la moción realizando una determinación: (1) de los hechos esenciales y pertinentes sobre los que no hay controversia sustancial; (2) de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos; (3) de hasta qué extremo la cuantía de los daños u otra reparación no está en controversia; y (4) ordenando los procedimientos ulteriores que entienda justos, lo cual podría incluir una vista evidenciaria limitada a los asuntos en controversia. En dicho caso, al celebrarse el juicio se considerarán probados los hechos especificados, se procederá en conformidad y, a base de las determinaciones realizadas en virtud de esta regla, se dictarán los remedios que correspondan, si alguno. Íd.

De otra parte, en *Meléndez González et al. v. M. Cuebas*, *supra*, el Tribunal Supremo delineó el estándar que el Tribunal de

Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra,* y los criterios que la jurisprudencia le exige al foro primario. Íd., pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Íd. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. Íd.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra.* Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. Íd.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el derecho. Íd., pág. 119.

**B.**

La Regla 33 de las de Procedimiento Civil, *supra*, R. 33, regula el mecanismo procesal del requerimiento de admisiones. Esta regla establece lo siguiente:

(a) *Requerimiento de admisión.* A los efectos de la acción pendiente únicamente, una parte podrá requerir por escrito a cualquier otra parte que admita la veracidad de cualesquiera materias dentro del alcance de la Regla 23.1 contenidas en el requerimiento, que se relacionen con cuestiones de hechos u opiniones de hechos o con la aplicación de la Ley a los hechos, incluyendo la autenticidad de cualquier documento descrito en el requerimiento. Se notificarán copias de los documentos conjuntamente con el requerimiento, a menos que hayan sido entregadas o suministradas para inspección y copia. El requerimiento podrá notificarse, sin el permiso del tribunal, a la parte demandante luego de comenzado el pleito y a cualquier otra parte luego de haber transcurrido el término de los treinta (30) días siguientes a la fecha de su emplazamiento. Si la parte demandada inicia cualquier tipo de descubrimiento dentro del referido plazo, dicha limitación no será de aplicación.

Cada materia sobre la cual se requiera una admisión deberá formularse por separado. **Todas las cuestiones sobre las cuales se solicite una admisión se tendrán por admitidas, a menos que dentro de los veinte (20) días de haberle sido notificado el requerimiento, o dentro del término que el tribunal concediese mediante una moción y notificación**, la parte a quien se le notifique el requerimiento le notifica a la parte que requiere la admisión una contestación suscrita bajo juramento por la parte o una objeción escrita sobre la materia. A menos que el tribunal acorte el término, una parte demandada no estará obligada a notificar contestaciones u objeciones antes de transcurridos veinte (20) días a partir de haberle sido entregada copia de la demanda y el emplazamiento. En este caso se debe apercibir a la parte demandada en el requerimiento que de no contestarlo en el término dispuesto se entenderá admitido. Si se objeta el requerimiento de admisión, deberán hacerse constar las razones para ello. La contestación deberá negar específicamente la materia o exponer en detalle las razones por las cuales la parte a quien se le requiere la admisión no puede admitir o negar lo requerido. Toda negación deberá responder cabalmente a la sustancia de la admisión requerida, y cuando la buena fe exija que una parte cualifique su contestación o niegue solamente una parte de lo requerido, deberá especificarse lo que sea cierto y negarse solamente el resto. Una parte a quien se le requiere una admisión no podrá aducir como razón para así no hacerlo la falta de información o de

conocimiento, a menos que demuestre que ha hecho las gestiones necesarias para obtener dicha información y que la información conocida u obtenida es insuficiente para admitir o negar. Una parte no podrá objetar el requerimiento basándose únicamente en que la materia requerida presenta una controversia justiciable; podrá, sujeto a lo dispuesto en la Regla 34.4, negar lo requerido o exponer las razones por las cuales no puede admitir o negar.

La parte que ha requerido las admisiones podrá, mediante una moción, cuestionar la suficiencia de las contestaciones u objeciones. A menos que el tribunal determine que una objeción está justificada, ordenará que se conteste lo requerido. Si el tribunal determina que una contestación no cumple con los requisitos de esta regla, podrá ordenar que se dé por admitido lo requerido o que se notifique una contestación enmendada. El tribunal podrá, en su lugar, determinar que se dispondrá finalmente del requerimiento en una conferencia con antelación al juicio o en una fecha señalada antes del juicio. Las disposiciones de la Regla 34.2(c) aplican a la imposición de gastos en que se incurra con relación a la moción.

(b) *Efecto de la admisión.* **Cualquier admisión hecha en conformidad con esta regla se considerará definitiva**, a menos que el tribunal, previa moción al efecto, permita el retiro o enmienda de la admisión. Sujeto a lo dispuesto en la Regla 37, que regula las enmiendas de una orden dictada en conferencia con antelación al juicio, el tribunal podrá permitir el retiro o la enmienda de la admisión si ello contribuye a la disposición del caso en sus méritos y la parte que obtuvo la admisión no demuestra al tribunal que el retiro o la enmienda afectará adversamente su reclamación o defensa. Cualquier admisión de una parte bajo estas reglas sólo surtirá efecto a los fines del pleito pendiente y no constituirá una admisión de dicha parte para ningún otro fin ni podrá ser usada contra ella en ningún otro procedimiento. Énfasis Suplido.

El fin de este mecanismo es acelerar los procesos, "definiendo y limitando las controversias del caso, porporcionando así un cuadro más claro sobre las mismas". ***Audiovisual Lang v. Sist. Est. Natal Hnos.***, 144 DPR 563, 571 (1997). Véase, además, ***Rivera Prudencio v. Mun. de San Juan***, 170 DPR 149, 171 (2007); J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Tomo I, Publicaciones JTS, San Juan, 2000, pág. 565. Con esta herramienta, pueden lograrse admisiones que usualmente podrían

evadirse en el curso del descubrimiento de prueba. ***Audiovisual Lang v. Sist. Est. Natal Hnos.***, supra, pág. 571.

El requerimiento de admisiones facilita la preparación del caso. Íd. De hecho, "el requerimiento de admisiones [puede] utilizarse para luego solicitar una sentencia sumaria". Íd., pág. 572. Véase, además, J. A. Cuevas Segarra, *op. cit.*, pág. 565.

Según dispone la Regla 33 (a) de las de Procedimiento Civil, *supra*, R. 33 (a), un requerimiento de admisiones podrá ser notificado a la parte demandante en cualquier momento, luego de presentada la demanda, y sin permiso del tribunal. En cambio, a la parte demandada se le puede notificar un requerimiento de admisiones "únicamente cuando haya transcurrido el término de los 30 días siguientes a la fecha de su emplazamiento, [...]". R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis de Puerto Rico, 2017, Cap. 33, sec. 3301, págs. 369-70.

Ahora bien, la parte requerida deberá contestar u objetar, bajo juramento, dentro de un término de veinte (20) días, contados a partir de la notificación del requerimiento, o dentro del término que el tribunal conceda. Regla 33 de las de Procedimiento Civil, *supra*, R. 33. Incumplir con ello conllevará que todas las cuestiones sobre las cuales se solicitó una admisión queden *automáticamente* admitidas. ***Audiovisual Lang v. Sist. Est. Natal Hnos.***, supra, pág. 573. Por lo tanto, no se requerirá una orden del tribunal para que se admitan. Íd.

Conforme a lo dispuesto en la Regla 33 de las de Procedimiento Civil, *supra*, R. 33, el no haber contestado el requerimiento de admisiones según lo establecido por la Regla, se considerará como una admisión definitiva. ***Audiovisual Lang v. Sist. Est. Natal Hnos.***, supra, pág. 574. Es decir, se entenderá como una admisión tácita. No obstante, la Regla 33 (b), *supra*, R. 33

(b) dispone que el tribunal, previa moción, podrá permitir el retiro o enmienda de las admisiones tácitas.

En este sentido, el Tribunal Supremo de Puerto Rico ha expresado que "en el ejercicio de su discreción el tribunal debe interpretar la regla de forma flexible favoreciendo, en los casos apropiados, que el conflicto se dilucide en los méritos." ***Audiovisual Lang v. Sist. Est. Natal Hnos.***, supra, págs. 573-74. Asimismo, nuestro Máximo Tribunal añadió que los tribunales deben "ejercer especial cuidado cuando se trata de una admisión tácita" y expresó que la Regla 33, *supra*, R. 33, "contiene los criterios que el tribunal tiene que utilizar cuando vaya a ejercer su facultad discrecional para permitirle a una parte retirar o modificar una admisión". Íd., págs. 573-574. Por lo tanto, según dispone la Regla 33, *supra*, R. 33, el tribunal podrá permitir "el retiro o enmienda de la admisión si ello contribuye a la disposición del caso en sus méritos y la parte que obtuvo la admisión no demuestra al tribunal que el retiro o enmienda afectará adversamente su reclamación o defensa". Íd.

Ahora bien, no debe perderse de perspectiva que "las disposiciones de esta regla son obligatorias y no meramente directivas". Íd., págs. 574-575. Ello requiere que haya un cumplimiento sustancial con las mismas. Íd. Como sabemos, es norma reiterada en nuestro ordenamiento jurídico que las Reglas de Procedimiento Civil se deben interpretar de modo que garanticen "una solución justa, rápida y económica de todo procedimiento". Regla 1 de las de Procedimiento Civil, *supra,* R. 1.

**IV.**

A tenor con la normativa jurídica pormenorizada, nuestra revisión de la sentencia sumaria es de novo, aunque limitada a la prueba documental presentada ante el foro de primera instancia. Véase, entre otros, ***Rivera Matos, et al v. Triple-S Propiedad, Inc. y ACE Insurance Company***, 204 DPR 1010 (2020). A su vez,

debemos examinar el expediente de la manera más favorable a la parte que se opone a la solicitud de sentencia sumaria. ***Meléndez González, et al. v. M. Cuebas***, *supra*, pág. 118. Conforme a ello, Procederemos a revisar la *Sentencia Final* apelada.

De un pormenorizado estudio del expediente, determinamos que la *Moción de Senetencia Sumaria* cumple con los requisitos de la Regla 36 de Procedimiento Civil, *supra*. Por su parte, no surge del expediente oposición a la solicitud de sentencia sumaria, a pesar de que se le concedió la oportunidad a la parte apelante.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso, resolvemos que el TPI no cometió los errores imputados. Los hechos consignados en la *Sentencia Final* encuentran apoyo en los documentos que obran en autos y que fueron examinados por el foro primario. Admitidos los hechos materiales, en virtud del requerimiento de admisiones no contestado, procedía dictar sentencia sumariamente.

No obstante, en su primer señalamiento de error, la parte apelante alega que la adjudicación sumaria tuvo el efecto práctico de privale de su día en corte, toda vez que se produjo mientras el pleito se tramitaba activamente. No le asiste la razón.

Del expediente ante nuestra consideración surge palmariamente que, la parte apelante tuvo amplia oportunidad de presentar su oposición a la moción de sentencia sumaria. El TPI inicialmente concedió un término de veinte (20) días a la parte apelante para exponer su posición a la solicitud de sentencia sumaria, incumpliendo con el mismo. Posteriormente, el 31 de octubre de 2025, la parte apelada presentó moción a los efectos de que se diera por sometida la moción de sentencia sumaria y no fue hasta el 9 de diciembre de 2025, <u>cuarenta y dos (42) días después de vencido el término concedido</u>, que el TPI emitió una orden, dando por sometida la moción de sentencia sumaria. No es hasta el 24 de

diciembre de 2025, <u>cincuenta y siete (57) días después de vencido el término para oponerse</u>, que la parte apelante presentó una moción de reconsideración a la orden que dio por sometida la petición sumaria. Cabe destacar que, en su moción de reconsideración, la parte apelante tampoco presentó su oposición a la moción de sentencia sumaria. Por tanto, el pleito no se encontraba tramitándose activamente por parte de los apelantes, más aún cuando tuvo la oportunidad, en exceso del término concedido, para presentar oposición y no cumplió. Esto, rebate a su vez el segundo señalamiento de error. La parte apelante no demostró que la adjudicación sumaria le privó de su día en corte. Por el contrario, se le concedió amplia oportunidad para oponerse a la moción de sentencia sumaria y para contestar los requerimientos de admisiones.

Por otra parte, la parte apelante en su tercer señalamiento de error expone que, el TPI debió considerar alternativas menos drásticas, ya que la adjudicación sumaria tuvo el efecto equivalente a una desestimación formal.

De entrada, advertimos que la discusión incluida por la parte apelante en apoyo a este señalamiento de error se centra igualmente en la privación de su día en corte. Fundamenta el alegado error en las medidas drásticas con efecto dispositivo, las cuales deben reservarse para casos extremos, previo apercibimiento y tras considerar alternativas menos severas. Por lo que argumenta que, al TPI resolver el pleito de manera final sin una oposición, la decisión tuvo un efecto práctico equivalente a una desestimación formal. No le asiste la razón.

Como mencionamos anteriormente, ante una moción de sentencia sumaria, es la parte opositora quien tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. ***León Torres v. Rivera Lebrón,*** *supra.*

Asimismo, la Regla 36.3 de Procedimiento Civil, *supra,* establece que, si la parte promovida no cumple con los requisitos impuestos por la mencionada regla y no presenta la contestación a la sentencia sumaria en el término provisto por esta regla, se entenderá que la moción queda sometida y el tribunal podría resolver en su contra de entenderlo procedente. Por lo que entendemos que la decisión del TPI no fue drástica, sino una que responde estrictamente a los requisitos establecidos por las Reglas de Procedimiento Civil ante una moción de sentencia sumaria.

Por último, en su cuarto señalamiento de error, la parte apelante alega que existen controversias de hechos materiales, y que la sentencia sumaria procede únicamente cuando no existe controversia real y sustancial sobre hechos materiales. Específicamente, expone que del expediente judicial surgen disputas sustanciales relacionadas con el cumplimiento contractual y el alcance de obligaciones entre las partes, las cuales ameritaban la ventilación del caso en sus méritos. Adviértase, que aún en esta etapa apelativa no somete documento alguno que controvierta las determinaciones de hechos formuladas por el TPI.

Sin embargo, la moción de sentencia sumaria se encuentra fundamentada en los hechos incontrovertidos y admitidos por la parte apelante, los cuales surgen de un Requerimiento de Admisiones. Según consta del expediente, la parte apelante no contestó en el término reglamentario los requerimientos de admisiones que le cursaron. Tampoco surge una solicitud o moción de prórroga al respecto. Por tanto, luego de estudiar los hechos incontrovertidos y admitidos por la parte apelante, podemos colegir que el TPI actuó correctamente al dictar la *Sentencia Final* apelada.

En relación a la condición de salud de la abogada, debemos recordar lo que ha resuelto nuestro Tribunal Supremo al respecto, "el compromiso que deben asumir los abogados debe trascender su

situación personal y existen medios para renunciar a la representación legal de clientes cuando el ***__abogado__*** no puede desempeñarse como se espera". ***In re: Gennol Hernández Rodríguez***, 181 DPR 643, 652 (2011). Énfasis y subrayado en el original.

**V.**

Por los fundamentos pormenorizados, se confirma la *Sentencia Final* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones